WILLIAM C. LEWIS, ESQ., BAR NO. 77193
DAVID S. CAPLAN, ESQ., BAR NO. 74219
LAW OFFICES OF WILLIAM C. LEWIS
510 Waverley Street
Palo Alto, CA 94301-2009
Telephone: (650) 322-3300
Facsimile: (650) 327-9720

Attorneys for Debtor,
Valles & Associates, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

In re:

VALLES & ASSOCIATES, LLC,

Debtor

Case No. 10-51813

CHAPTER 11

**DEBTOR'S CHAPTER 11 PLAN DATED MARCH 11, 2011**

Valles & Associates, LLC, a California limited liability company, and the debtor and debtor in possession in this Chapter 11 case, hereby proposes the following plan for restructuring of its financial affairs:

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 1 of 22

**TABLE OF CONTENTS**

1.   DEFINITIONS.................................................................................................................1

  1.1  Defined Terms..........................................................................................................1

  1.2  Undefined Terms.......................................................................................................4

2.   CLASSIFICATION OF CLAIMS AND INTERESTS..................................................4

  2.1  Secured Claims..........................................................................................................4

    (a)   Class A-1 (Pacific Capital)...............................................................................4

    (b)   Class A-2 (Second Lien Holders).....................................................................4

    (c)   Class A-3 (Real Property Taxes).......................................................................4

  2.2  General Unsecured Claims........................................................................................5

    (a)   Class B-1 (Administrative Convenience Claims)..............................................5

    (b)   Class B-2 (Unsecured Guarantor Claims).........................................................5

    (c)   Class B-3 (Other Unsecured Claims)................................................................5

  2.3  Membership Interests (Class C)................................................................................5

    (a)   Class C-1 (Class A Members)............................................................................5

    (b)   Class C-2 (Class B Members)............................................................................5

    (c)   Class C-3 (Class C Members)............................................................................5

3.   TREATMENT OF UNCLASSIFIED CLAIMS............................................................6

  3.1  Administrative Claims...............................................................................................6

  3.2  Priority Governmental Claims..................................................................................6

4.   TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS...................................6

  4.1  Secured Claims..........................................................................................................6

    (a)   Class A-1 (Pacific Capital)...............................................................................6

    (b)   Class A-2 (Second Lien Holders).....................................................................7

    (c)   Class A-3 (Real Property Taxes).......................................................................7

  4.2  Unsecured Claims......................................................................................................8

**DEBTOR'S CHAPTER 11 PLAN DATED MARCH 11, 2011**

i

Case: 10-51813    Doc# 49    Filed: 03/11/11    Entered: 03/11/11 16:33:14    Page 2 of 22

|  |  |  |
|---|---|---|
| (a) | Class B-1 (Administrative Convenience Claims) | 8 |
| (b) | Class B-2 (Guarantor Claims) | 9 |
| (c) | Class B-3 (Other Unsecured Claims) | 9 |
| 4.3 | Membership Interests (Class C) | 9 |
| (a) | Class C-1 (Class A Members) | 9 |
| (b) | Class C-2 (Class B Members) | 10 |
| (c) | Class C-3 (Class C Members) | 10 |
| 5. | MEANS FOR IMPLEMENTATION OF THE PLAN | 10 |
| 5.1 | Amendment of Organizational Documents | 10 |
| 5.2 | Mechanics of Issuing New Membership Interests | 10 |
| 5.3 | Disputed Claims | 11 |
| (a) | Reserve for Disputed Claims | 11 |
| (b) | Distributions on Disputed Claims | 11 |
| 5.4 | Limitations on Klauer Membership Interest | 12 |
| 5.5 | Advances by Albert Valles, Jr. | **Error! Bookmark not defined.** |
| 5.6 | Release of Liens and Interests | 12 |
| 5.7 | Post-confirmation U.S Trustee Reports and Fees | 13 |
| 5.8 | Post-confirmation Notices | 13 |
| 5.9 | Bar Date for Administrative Claims | 13 |
| 5.10 | Section 1145 Exemption | 13 |
| 6. | EFFECTS OF CONFIRMATION | 14 |
| 6.1 | Plan Replaces Pre-Confirmation Obligations | 14 |
| 6.2 | Discharge of Debtor | 14 |
| 6.3 | Creditors Restrained from Enforcement Actions | 14 |
| 7. | DEFAULT AND REMEDIES | 15 |
| 7.1 | Event of Default Defined | 15 |
| (a) | Monetary Default | 15 |

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 3 of 22

(b) Non-Monetary Default ................................................................................ 15

(c) Notice of Request for Court Determination ................................................ 15

(d) Remedies upon an Event of Default ........................................................... 16

(e) Effect of Conversion to Chapter 7 ............................................................. 16

8. RETENTION AND SETTLEMENT OF CLAIMS ................................................ 16

8.1 Retention and Enforcement of Claims ................................................................ 16

8.2 Settlement of Objections to Claims .................................................................... 16

8.3 Stale Checks and Claim Waivers ........................................................................ 17

9. EXECUTORY CONTRACTS AND LEASES ....................................................... 17

9.1 Assumption or Rejection of Contracts ................................................................ 17

9.2 Rejection Claims Bar Date .................................................................................. 17

10. REVESTING OF PROPERTY ............................................................................... 17

11. RETENTION OF JURISDICTION ....................................................................... 18

12. REQUEST FOR CONFIRMATION ...................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# 1.  **DEFINITIONS**

## 1.1  **Defined Terms**

The following definitions apply in this Plan and the related Disclosure Statement, as each document may be amended from time to time, except to the extent that any of the following definitions is superseded by a revised definition in such an amendment.

"Affiliate" means an entity which is an affiliate of a party in interest within the meaning of Section 101(2) of the Bankruptcy Code and every partnership and joint venture in which such entity is a general partner or joint venturer.

"Allowed Claim" or "Allowed Interest" means a claim against, or equity interest in, the Debtor to the extent that:

A.  If the claim or interest arose or is deemed to have arisen on or before the Filing Date, (1) proof of the claim or interest either is timely filed or is deemed filed under Code §1111(a) or Rule 3003(b)(2), and (2) the claim or interest either is not the subject of a timely filed objection or is allowed by a Final Order; or

B.  If the claim arose after the Filing Date and is not deemed to have arisen on or before such date, (1) the claim is of a kind that can be voluntarily paid from the Debtor's estate without specific Bankruptcy Court approval and is so paid or (2) the claim has been allowed by a Final Order; and

C.  Such claim is not subject to disallowance pursuant to §502(d) of the Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California.

"Bar Date" means a date fixed as the last date for filing proofs of claims.

"Cash" means cash and cash equivalents including, but not limited to, checks and other similar forms of payment or exchange.

"Claims Reserve" means the federally insured, interest bearing deposit account to be established by the Debtor and into which shall be deposited all funds being reserved until resolution

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 5 of 22

of Disputed Claims pursuant to Section 5.3(a) hereof.

"Code" means the Bankruptcy Code contained in Title 11 of the United States Code.

"Confirmation" means entry of the Confirmation Order.

"Confirmation Hearing" means the hearing conducted by the Bankruptcy Court at which the Plan is confirmed.

"Confirmation Notice" means the notice sent to creditors in compliance with Rule 2002 informing them that the Plan has been confirmed.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

"Debtor" means Valles & Associates, LLC, a California limited liability company.

"Disputed Claim" means a claim against the Debtor (a) as to which a proof of claim is filed which does not assert a claim to a fixed, liquidated sum, or (b) to which an objection has been filed which neither is the subject of a Final Order nor has been withdrawn.

"Distributions" means the payments of Cash to be distributed hereunder to holders of Allowed Claims.

"Effective Date" means the fifteenth day after Confirmation or such other date as the Debtor shall fix which shall be not more than thirty days following Confirmation.

"Final Order" means an order as to which (a) any appeal or petition for writ of certiorari that has been filed has been finally determined or dismissed, or (b) the time for appeal has expired and a notice of appeal has not been filed.

"First DOT" means that **Deed of Trust, Security Agreement, Assignment of Leases, Rents and Profits, and Fixture Filing** recorded on May 3, 2007, in the San Benito County real estate records as instrument number 2007-0005822.

"First Note" means that **Term Note** dated April 20, 2007, in the original principal amount of $1,777,000, and made by Alron Properties and Investments, LLC, Ronald Klauer, Jr., and Al Valles, Jr., in favor of Pacific Capital.

"Impaired Claim" means a claim against the Debtor that arose or is deemed to have arisen

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 6 of 22

prior to Confirmation that is not an Unimpaired Claim.

"LBR" means the Local Bankruptcy Rules of the Bankruptcy Court.

"Operating Agreement" means that **Operating Agreement for Valles & Associates, LLC**, made as of November 6, 2007.

"Pacific Capital" means Pacific Capital Bank, N.A. a national banking association, dba San Benito Bank, in its capacity as holder of the First Note.

"Petition Date" means the date on which the petition to commence this case was filed.

"Plan" means this **Debtor's Amended Chapter 11 Plan Dated as of March 11, 2011**, together with any modifications and amendments thereto.

"Plan Interest" means interest earned on funds held on deposit in the Claims Reserve during the period for which such Plan Interest is calculated.

"Plan Supplement" means the **Supplement to Debtor's Chapter 11 Plan Dated as of March 11, 2011** filed concurrently herewith, together with any modifications thereto.

"Real Property" means that parcel of real property and the improvements thereon consisting of approximately 7.4 acres located in the city of Hollister, California, known by the addresses of 1525, 1575 and 1605 Cushman Road and identified the San Benito County Assessor's Offices as parcel numbers 057-230-001, 057-230-002, 057-230-003 and 057-230-019.

"Replacement Note" means the promissory note to be delivered to Pacific Capital in replacement of the Term Note pursuant to this Plan and substantially in the form attached to the Plan Supplement as Exhibit C.

"Restated DOT" means the **Amended and Restated Deed of Trust, Security Agreement, Assignment of Leases, Rents and Profits, and Fixture Filing** in the form included in the Plan Supplement as Exhibit A.

"Restated Operating Agreement" means the **Amended and Restated Operating Agreement of Valles & Associates, LLC,** in the form included in the Plan Supplement as Exhibit B

"Rules" means the Federal Rules of Bankruptcy Procedure.

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 7 of 22

"Second Lien Holders" means (a) MAB, LLC, and (b) Jason Everett Noble and Carolyn R. Cullumber Noble, as Trustees of the Noble Revocable Living Trust, UTA dated March 15, 1999, in their capacities as beneficiaries of the Second DOT.

"Second DOT" means that Deed of Trust executed by Albert Valles and Tiffany Valles, husband and wife, currently held by the Second Lien Holders and recorded on September 13, 2007, in the San Benito County real estate records as instrument number 2007-0011241.

"Unimpaired Claim" means a claim that is treated as not impaired under this Plan.

**1.2    Undefined Terms**

A term used, but not defined, herein and defined in the Code or the Rules has the meaning given to that term in the Code or the Rules.

## 2.    CLASSIFICATION OF CLAIMS AND INTERESTS

All claims (except claims treated under Article III) and interests are placed in the following classes:

**2.1    Secured Claims**

    **(a)    Class A-1 (Pacific Capital)**

Class A-1 consists of the claim held by Pacific Capital to the extent that it is secured by a legally enforceable interest in the Real Property pursuant to the First DOT.

    **(b)    Class A-2 (Second Lien Holders)**

Class A-2 consists of the claims held by the Second Lien Holders to the extent that they are secured by a legally enforceable interest in the Real Property pursuant to the Second DOT.

    **(c)    Class A-3 (Real Property Taxes)**

Class A-3 consists of all claims (whether arising before or after the Petition Date) held by San Benito County on account of real property taxes to the extent that they are secured by a legally enforceable interest in the Real Property.

Case: 10-51813    Doc# 49    Filed: 03/11/11    Entered: 03/11/11 16:33:14    Page 8 of 22

**2.2    General Unsecured Claims**

    (a)    **Class B-1 (Administrative Convenience Claims)**

Class B-1 consists of all Allowed Claims other than claims that are entitled to priority under §507(a)(1) or (8) of the Code and/or included in another class under this Plan that are in an amount of $20,000 or less or whose holders agree, prior to the Effective Date, to reduce such claims to $20,000.

    (b)    **Class B-2 (Unsecured Guarantor Claims)**

Class B-2 consists of all nonpriority claims held or asserted by parties who are co-debtors on debts underlying the claims in Class A-1 and A-2 on account of their obligations as such co-debtors.

    (c)    **Class B-3 (Other Unsecured Claims)**

        (i)    Class B-3A consists of the Allowed Claim held by Joe Bowman, Jr. in the amount of $80,000.

        (ii)    Class B-3B consists of the Allowed Claim held by John L. and Jean Barrett in the amount of $100,000.

**2.3    Membership Interests (Class C)**

    (a)    **Class C-1 (Class A Members)**

Class C-1 consists of membership interests in the Debtor which are identified in the Debtor's books and records as Class A membership interests within the meaning of the Operating Agreement.

    (b)    **Class C-2 (Class B Members)**

Class C-2 consists of membership interests in the Debtor which are identified in the Debtor's books and records as Class B membership interests within the meaning of the Operating Agreement.

    (c)    **Class C-3 (Class C Members)**

Class C-3 consists of the membership interests in the Debtor which are identified in the Debtor's books and records as Class C membership interests within the meaning of the Operating Agreement.

Case: 10-51813    Doc# 49    Filed: 03/11/11    Entered: 03/11/11 16:33:14    Page 9 of 22

## 3. TREATMENT OF UNCLASSIFIED CLAIMS

**3.1 Administrative Claims**

The holders of Allowed Claims entitled to priority under §507(a)(1) of the Code (administrative claims, including fees due under 28 U.S.C. §1930), other than claims included in Class A-3, shall receive Cash in the amount of such claims on the Effective Date or at such time and in such amount as the Debtor and the holder of any such claim might agree. If such a claim has not been allowed on the Effective Date, the holder shall receive such payment within thirty days after the Debtor receives notice that such claim is an Allowed Claim.

**3.2 Priority Governmental Claims**

Allowed Claims entitled to priority under §507(a)(8) of the Code (unsecured claims by governmental units), if any, shall be paid in full not later than fourteen (14) days after the Effective Date.

## 4. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Holders of Allowed Claims in the following classes shall receive the treatment set forth in this Article on account, and in complete satisfaction of, all such Allowed Claims.

**4.1 Secured Claims**

**(a) Class A-1 (Pacific Capital)**

Class A-1 is impaired under this Plan. On account of its Allowed Claim in Class A-1, Pacific Capital shall receive:

    (i) Retention of the lien on the Real Property and other property of the Debtor established by recording of the First DOT, with the same validity, priority and, except as modified hereby, effect as it held immediately prior to the Petition Date;

    (ii) In replacement of any obligations of the Debtor on the Term Note, the execution and delivery to Pacific Capital of the Replacement Note, plus performance by the Debtor under such note; and

    (iii) Monthly installment payments on the Replacement Note of $13,131.87 each,

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 10 of 22

commencing on the 20th day of the first month which begins after the Effective Date and continuing on the same day of each succeeding month until the 20th day of the 60th month which begins after the Effective Date, at which time all obligations of the Debtor under the Replacement Note shall be due and payable;

(iv)     Modification and restatement of the terms of the First DOT by execution, delivery, acknowledgement and recording of the Restated DOT, plus performance by the Debtor under the Restated DOT.  In the event that the Debtor hereafter subdivides the Real Property into two or more parcels, the lien held by Pacific Capital pursuant to the Restated Deed of Trust shall continue to encumber the entire Real Property as subdivided.

Except as expressly preserved by this Plan, all other agreements, covenants and/or undertakings by the Debtor pursuant or relating to the Allowed Claim in Class A-1 shall be cancelled and terminated as of the Effective Date.  In addition, no acts, conditions or events on or prior to the Effective Date shall be grounds to declare the Debtor to be in default under its obligations to Pacific Capital, and the Debtor is not in default under such obligations as of the Effective Date.  From and after the Effective Date, the only obligations of the Debtor to Pacific Capital shall be those set forth herein, in the Replacement Note and in the Restated DOT.

**(b)     Class A-2 (Second Lien Holders)**

Class A-2 is impaired under this Plan.  On account of their Allowed Claims in Class A-2, the Second Lien Holders shall receive Class 1-B membership interests in the Debtor pursuant to the Restated Operating Agreement at a price of $10,000 of each such Allowed Claim for each Class 1-B membership interest unit.

**(c)     Class A-3 (Real Property Taxes)**

Class A-3 is impaired under this Plan.  On account of its Allowed Claim in Class A-3, San Benito County, California, shall receive:

(i)      Retention by its lien on the Real Property;

(ii)     Interest on such Allowed Claim from the Effective Date of this Plan at the rate

---

**DEBTOR'S CHAPTER 11 PLAN DATED MARCH 11, 2011**                                      7

provided therefor under applicable nonbankruptcy law in effect on the Effective Date;

(iii)     Payments on such Allowed Claim as follows:

(A)     A payment on such Allowed Claim in an amount equal to the installment of property taxes for the 2010-2011 fiscal year that would have been due on April 10, 2011 (plus any accrued interest thereon from April 10, 2011) had this case not been commenced;

(B)     Payment of the balance of such Allowed Claim [plus interest thereon as provided in <u>subsection (ii)</u>] in twenty (20) equal quarterly installments, with such payments commencing on the last day of the first calendar quarter that begins after the Effective Date and continuing on the same day of each calendar quarter thereafter until paid in full; and

(C)     At the closing of any sale of all or substantially all of the Real Property (or refinancing of the Allowed Claim in Class A-1), full payment of any then-unpaid balance of such Allowed Claim and accrued but unpaid interest thereon calculated in accordance with <u>Subsection (ii)</u>.  If the Real Property is hereafter subdivided into two or more parcels, the Debtor shall pay a *pro rata* portion of the then-unpaid balance of such Allowed Claim and accrued interest upon the closing of the sale of all or substantially all of any individual parcel, with the proration based on the proportion that the parcel sold bears to the entire Real Property.

**4.2     <u>Unsecured Claims</u>**

**(a)     <u>Class B-1 (Administrative Convenience Claims)</u>**

Class B-1 is impaired under this Plan.  Each holder of an Allowed Claim in Class B-1 shall receive full payment of such claim, without interest, in six equal installments, with such payments commencing on the last day of the first calendar month that begins after the Effective Date and continuing on the same day of the next five months thereafter.

---

**(b)    Class B-2 (Guarantor Claims)**

Class B-2 is impaired under this Plan.  No holder of a claim in Class B-2 shall receive any payment or other Distribution on its claim unless and until it actually makes a payment to the creditor on whose claim the holder is a co-debtor.  When such a holder makes a payment on such a claim, such holder shall be subrogated to all the rights, security interests, and priorities of the creditor to whom the holder makes such payment.  In the event and to the extent that, for some reason and contrary to the intent of this Plan, such holder is not subrogated with respect to the full amount of the claim paid by it, such holder shall receive Class 1-B membership interests in the Debtor pursuant to the Restated Operating Agreement in an amount equal to $10,000 of such non-subrogated amount for each Class 1-B membership interest unit.

**(c)    Class B-3 (Other Unsecured Claims)**

**(i)    Class B-3A (Joe Bowman, Jr.) -** On account of his Allowed Claim in Class B-3A, Joe Bowman, Jr. shall receive Cash in the total amount of 25% of such Allowed Claim, payable not later than December 31, 2011.

**(ii)    Class B-3B (John & Jean Barrett) -** On account of their Allowed Claim in Class B-3B, John and Jean Barrett shall receive Class 1-B membership interests in the Debtor pursuant to the Restated Operating Agreement in an amount equal to $10,000 of such claim for each Class 1-B membership interest unit.

**4.3    Membership Interests (Class C)**

**(a)    Class C-1 (Class A Members)**

Class C-1 is impaired under this Plan.  Each holder of Class A Membership Interests under the Operating Agreement shall be converted into one unit of Class 1-A Membership Interests under the Restated Operating Agreement.  Each such holder's capital account balance as of the Effective Date shall equal such holder's capital account balance as of January 1, 2011, calculated as required for federal income tax purposes.  Each holder of a Class A Membership Interest who does not reject this Plan shall be deemed to have approved the Restated Operating Agreement.

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 13 of 22

    **(b)**    **Class C-2 (Class B Members)**

Class C-2 is impaired under this Plan. Each unit of Class B Membership Interests under the Operating Agreement shall be converted into one unit of Class 1-A Membership Interests under the Restated Operating Agreement. Each such holder's capital account balance as of the Effective Date shall equal such holder's capital account balance as of January 1, 2011, calculated as required for federal income tax purposes. Each holder of a Class B Membership Interest who does not reject this Plan shall be deemed to have approved the Restated Operating Agreement.

    **(c)**    **Class C-3 (Class C Members)**

Class C-3 is impaired under this Plan. Each unit of Class C Membership Interests under the Operating Agreement shall be converted into one unit of Class 1-A Membership Interests under the Restated Operating Agreement. Each such holder's capital account balance as of the Effective Date shall equal such holder's capital account balance as of January 1, 2011, calculated as required for federal income tax purposes. Each holder of a Class C Membership Interest who does not reject this Plan shall be deemed to have approved the Restated Operating Agreement.

## 5.    MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1    Amendment of Organizational Documents**

Confirmation of this Plan shall constitute approval of the Bankruptcy Court for amendment of the Operating Agreement to read as set forth in the Restated Operating Agreement.

**5.2    Mechanics of Issuing New Membership Interests**

The conversion of Allowed Claims in Classes A-2, B-2 and B-3B into Membership Interests in the Debtor pursuant to this Plan shall be deemed to have occurred automatically on the Effective Date. However, in order for each holder of such a claim to become a Member of the Debtor, such holder must execute the acknowledgement required by Section 4.4 of the Restated Operating Agreement; any such holder who does not execute such an acknowledgment shall be deemed to only have received an Economic Interest (within the meaning of the Restated Operating Agreement).

## 5.3  Disputed Claims

### (a)  Reserve for Disputed Claims

When any Distribution is to be made to holders of claims under this Plan, the Debtor shall (i) as to Distributions payable in Cash, withhold in the Claims Reserve any amount that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim and (ii) as to Distributions payable in Class 1-B membership interests in the Debtor, reserve on its organizational records the interests that would be distributed to the holder if its claim were an Allowed Claim.  The amount withheld shall be (i) an amount the Debtor and the holder of the Disputed Claim agree should be withheld, (ii) the Distribution that would have been made if the Allowed amount of the claim were (A) the amount claimed by the holder in its proof of claim filed or deemed filed in the Chapter 11 Case if such proof of claim asserts a fixed, liquidated sum or (B) the amount shown in the Debtor's Schedules filed pursuant to Fed. R. Bankr. P. 1007 if such amount is a fixed, liquidated sum and no proof of claim is filed, or (iii) the amount estimated by the Bankruptcy Court upon a motion brought on not less than fourteen days notice to the affected parties and a hearing under LBR 9014-1.  Such amount shall be retained in the Claims Reserve or reserved, as applicable, until the allowability of such claim is resolved.  After such claim is resolved, (x) any funds held in the Claims Reserve on account of such claim and not paid to the holder of the claim may be transferred to the Debtor's general accounts and used in the operation of its business and (y) any membership interests reserved on the Debtor's books and records and not allocated to such holder shall be released from reserve.

### (b)  Distributions on Disputed Claims

To the extent that a Disputed, contingent or unliquidated claim is determined to be an Allowed Claim after one or more Distributions have been made hereunder, then within 30 days after the Debtor has notice that such a claim has become an Allowed Claim, the Debtor shall distribute to its holder consideration in an amount equal to (i) the Distribution the Debtor would have made to the holder if the claim had been an Allowed Claim at the time such distributions were made and (ii) with respect to Distributions payable in cash, Plan Interest on any distribution payable in Cash, accruing

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 15 of 22

from the date each such Distribution would have been made.

**5.4**     <u>Limitations on Klauer Membership Interest</u>

    Pursuant to <u>Section 8.1</u> of this Plan, the Debtor shall retain its claim against the Kraig Klauer Family Limited Partnership or the balance remaining due on the promissory note it issued to the Debtor in exchange for its Class B membership interest under such note and under Section 17201 of the California Corporations Code, regardless of any other remedies the Debtor might exercise pursuant to the Restated Operating Agreement.

    Further, notwithstanding any conflicting provision of the Restated Operating Agreement, the Trust may not exercise any voting or other managerial rights on account of its Class 1-B Membership Interest or receive any distributions from the Debtor so long as it is in default under its obligations to the Debtor. In addition, the Debtor shall be entitled to offset any distributions that would otherwise be payable to the Partnership and apply them to any outstanding balance due on such note until such note is fully satisfied.

**5.5**     <u>Release of Liens and Interests</u>

    Upon receipt of the full payment provided hereunder for any secured Allowed Claim (or upon the occurrence of any other event or condition which terminates a party's lien on or other interest in property of the Debtor), any party which has filed or recorded a notice, deed of trust, financing statement, or other public statement of a lien on or interest in assets of the Debtor shall file or record such notice, reconveyance, termination statement, or other public statement as is necessary or appropriate to evidence the termination of the lien or interest formerly held by such party. In addition, the Debtor is hereby appointed as the lawful attorney in fact for each party whose lien or interest is terminated under this Plan with full power and authority to execute, acknowledge, file and/or record on behalf of such holder any reconveyances, conveyances, notices, termination statements, or other public statements necessary or appropriate to evidence termination of such party's lien or interest.

---

**DEBTOR'S CHAPTER 11 PLAN DATED MARCH 11, 2011**         12

**5.6 Post-confirmation U.S Trustee Reports and Fees**

The Debtor shall pay any fees due pursuant to 28 U.S.C. §1930 for each quarter which ends after the Effective Date within 30 days following the end of each such quarter. In addition, the Debtor shall file a report in the form attached as <u>Exhibit D</u> to the Plan Supplement, and serve a copy thereof on the office of the United States Trustee, Region 17, not later than the last day of the month following the end of each quarter for which such fees are due.

**5.7 Post-confirmation Notices**

Except for notice of entry of the Confirmation Order, all notices required or permitted to be given to all creditors or other parties in interest pursuant to Rule 2002 shall be deemed appropriate and in compliance with such rule if given only to the Debtor, the U.S. Trustee, Pacific Capital, the Members of the Debtor, any parties who filed and served upon the Debtor requests for special notice as to matters relating to the Plan, and parties who, after Confirmation, serve upon the Debtor requests for copies of post-confirmation notices.

**5.8 Bar Date for Administrative Claims**

All parties who assert claims entitled to priority under §507(a)(1) of the Code (other than professionals employed by the Debtor) shall file requests for payment of such claims, and serve copies thereof on the Debtor, not later than sixty (60) days after the Effective Date. Any claim by a party referred to in the preceding sentence asserting entitlement to such priority shall be forever barred and not entitled to payment unless it is filed and served on or before such date.

**5.9 Section 1145 Exemption**

To the extent provided by §1145 of the Code, issuance and conversion of Membership Interests under this Plan and the Restated Operating Agreement, and the issuance of all securities issued in exchange therefor or on conversion thereof, shall be exempt from the registration requirements of the Securities Act of 1933, as amended, and any state or local laws requiring the registration for offer or sale of a security or registration or licensing of an issuer, underwriter or dealer.

Case: 10-51813   Doc# 49   Filed: 03/11/11   Entered: 03/11/11 16:33:14   Page 17 of 22

# 6.    EFFECTS OF CONFIRMATION

## 6.1    Plan Replaces Pre-Confirmation Obligations

Upon Confirmation, this Plan shall be binding on every creditor whose claim against the Debtor arose or is deemed to have arisen prior to Confirmation.  Except for the Debtor's obligations with respect to Unimpaired Claims, the Debtor's obligations under this Plan supersede and replace all claims and related obligations that arose or are deemed to have arisen prior to Confirmation and only the obligations of the Debtor under this Plan may be enforced after Confirmation by any holder of a pre-Confirmation claim.

## 6.2    Discharge of Debtor

Except as otherwise provided herein or in the Confirmation Order, Confirmation shall discharge the Debtor from all debts that arose, or are treated under the Code as if they had arisen, at any time before Confirmation.  The discharge shall be effective as to each debt regardless of whether a proof of claim therefor is filed or deemed filed, whether the claim is an Allowed Claim, or whether the holder thereof accepts the Plan.

## 6.3    Creditors Restrained from Enforcement Actions

After Confirmation, no creditor holding a claim against the Debtor that arose or is deemed to have arisen prior to Confirmation may take any action to enforce such a pre-Confirmation claim against the Debtor or any of its property, except for an Unimpaired Claim.  In addition, regardless of whether any creditor might otherwise have the right to enforce its claims against the Debtor after Confirmation, no holder of an Impaired Claim may commence or continue any action, employ any process, or take any action against the Debtor or any of its property to enforce or collect upon its pre-Confirmation claim or any obligations due it under this Plan unless and until an Event of Default has occurred and is continuing with respect to such claim, and then only in accordance with the provisions of Article 7 hereof.

Case: 10-51813    Doc# 49    Filed: 03/11/11    Entered: 03/11/11 16:33:14    Page 18 of 22

# 7. DEFAULT AND REMEDIES

## 7.1 Event of Default Defined

### (a) Monetary Default

If the Debtor fails to make any payment required under the Plan to the holder of an Allowed Claim treated under this Plan within seven (7) calendar days after that due date thereof specified in this Plan, the holder of such claim may serve written notice on the Debtor at its principal place of business. An Event of Default on such claim shall be deemed to have occurred twenty-one (21) calendar days after the creditor has duly served such notice on the Debtor unless, prior to the expiration of such twenty-one (21) day period, the Debtor has (a) made the delinquent payment or (b) filed with the Bankruptcy Court a motion requesting an extension of time to cure the delinquency or a determination that no delinquency occurred.

### (b) Non-Monetary Default

If the Debtor fails to timely fulfill any obligation to a creditor treated under this Plan other than a payment required under the Plan, the creditor to whom such obligation is due may serve written notice on the Debtor at its principal place of business demanding cure of the delinquent obligation. An Event of Default on such obligation shall be deemed to have occurred thirty-five (35) calendar days after such notice is duly served unless, prior to the expiration of such thirty-five (35) day period, the Debtor has (a) cured the delinquency or (b) filed with the Bankruptcy Court a motion requesting an extension of time to cure the delinquency or a determination that no delinquency occurred.

### (c) Notice of Request for Court Determination

If the Debtor files a motion under Section 7.1(a) or (b) above, the Debtor shall request a hearing to be held not less than seven (7) nor more than twenty-one (21) days after the Debtor serves notice of such motion on the affected creditor and the United States Trustee as provided under the Rules and the LBR, except for time limits therein which conflict with the notice periods in this section.

Case: 10-51813    Doc# 49    Filed: 03/11/11    Entered: 03/11/11 16:33:14    Page 19 of 22

### (d)  Remedies upon an Event of Default

When an Event of Default has occurred and so long as it continues uncured, the affected creditor may, but is not obligated to:

(i)  Declare all payments and other performance due to the creditor under this Plan with respect to such claim to be immediately due and payable by giving written notice to the Debtor, in the manner provided in this Plan, that such declaration will become effective unless the Event of Default is cured within seven (7) calendar days after such notice is given; and either

(ii)  Take any actions permitted under applicable non-bankruptcy law to enforce the obligation due the affected creditor under this Plan with respect to such claim; or

(iii)  File a motion with the Bankruptcy Court requesting conversion of this case to a case under Chapter 7 of the Code as provided in the Code, the Rules and the LBR.

### (e)  Effect of Conversion to Chapter 7

If, for any reason, this case is converted to a case under Chapter 7 of the Code:

(i)  All property of the Debtor as of the date of conversion, whether acquired before or after Confirmation shall vest in the Chapter 7 bankruptcy estate; and

(ii)  All creditors, whether their claims arose before or after Confirmation, are prohibited from taking action against the Chapter 7 bankruptcy estate or property of the estate to the extent provided by Section 362 of the Code.

## 8.  RETENTION AND SETTLEMENT OF CLAIMS

### 8.1  Retention and Enforcement of Claims

The Debtor shall retain and may enforce all claims held by it or its estate, including claims arising from the power, under the Code or otherwise, to avoid and recover transfers, except such claims which have been waived, relinquished, or released hereunder.

### 8.2  Settlement of Objections to Claims

If a party has timely filed an objection to a claim, the party who filed the objection and the

---

**DEBTOR'S CHAPTER 11 PLAN DATED MARCH 11, 2011**                                 16

1  holder of the Disputed Claim may enter into a written settlement agreement to compromise such

2  claim, which agreement, when filed with the Bankruptcy Court, will have the force and effect of a

3  Final Order.

4  **8.3     Stale Checks and Claim Waivers**

5          All checks constituting disbursement of amounts due under the Plan shall be drawn so as to

6  become automatically void if not cashed or otherwise negotiated within 90 days after issuance.  If

7  any such check becomes void, the claim with respect to which the check was issued shall be deemed

8  withdrawn, and the funds corresponding to the withdrawn claim shall be disbursed according to this

9  Plan.

10              **9.     EXECUTORY CONTRACTS AND LEASES**

11  **9.1     Assumption or Rejection of Contracts**

12          Except for the executory contracts and unexpired leases described in <u>Exhibit E</u> attached to

13  the Plan Supplement or in an amendment to Exhibit E which may be filed before Confirmation, the

14  Debtor hereby rejects all executory contracts and unexpired leases to which it was a party on the

15  Petition Date.  On the Effective Date, the executory contracts and unexpired leases described in such

16  Exhibit E shall be deemed assumed by the Debtor.

17  **9.2     Rejection Claims Bar Date**

18          All parties who assert claims arising from rejection of executory contracts under this Plan

19  shall file proofs of claim for any such claims, and serve copies thereof on the Debtor, not later than

20  sixty (60) days after the Effective Date.  Any party asserting such a claim shall be forever barred and

21  not entitled to payment unless proof of the claim is filed and served on or before such date.

22              **10.     REVESTING OF PROPERTY**

23          Except as provided in this Plan or in the Confirmation Order, on the Effective Date, the

24  Debtor shall be vested with all of the property of its estate free and clear of all claims, liens, charges

25  and other interests of creditors and equity security holders in the Debtor.  Upon Confirmation, the

26  Debtor shall operate its business free of any restrictions of the Code, the Rules, or the Bankruptcy

---

1 Court.

## 11.   RETENTION OF JURISDICTION

Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction to enforce the provisions, purposes, and intent of this Plan including, without limitation:

A.   Determination of the allowability of claims and interests;

B.   Approval of the assumption, assignment, or rejection of any executory contract or unexpired lease of the Debtor;

C.   Determination of requests for payment entitled to priority under §507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto;

D.   Resolution of controversies and disputes regarding interpretation of this Plan;

E.   Implementation of the provisions of this Plan and entry of orders in aid of confirmation and enforcement of this Plan, including, without limitation, appropriate orders to protect the Debtor from creditor action;

F.   Modification of the Plan;

G.   Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor; and

H.   Entry of a final decree closing this case.

## 12.   REQUEST FOR CONFIRMATION

If necessary, the Debtor requests Confirmation of this Plan pursuant to §1129(b) of the Code.

Dated:  March 11, 2011

LAW OFFICES OF WILLIAM C. LEWIS,
Counsel for Debtor, Valles & Associates, LLC


By;   ___/s/ William C. Lewis_____
         William C. Lewis